Good morning, Your Honors. May it please the Court, Steve Shurey for Appellant Anthony Guy, along with Christopher Saldana. Your Honors, this is the second time we've been before this Court on this case, as you well know. It's a 1983 case where we went to trial. Mr. Guy prevailed at trial and then brought a motion originally for attorney's fees and costs, which was denied in total by the District Court on the grounds that he didn't succeed well enough because he only had a nominal damage award of $1. We appealed that to this Court, and this Court was very clear in saying Mr. Guy was a prevailing party. In this constitutional 1983 case, there was a public benefit from the verdict, and that he was entitled to an award of attorney's fees and costs. So it was remanded back to the District Court to figure out what those costs would be, and to follow the law doing that, with the suggestion that he may, or the District Court may, take consideration of the nominal damages award, in addition to the other factors that it must consider in coming up with a fair accounting of the attorney's fees and costs for Mr. Guy, the prevailing party. Motion was heard. The District Court, after the motion, came back with an order that, in essence, well, not in essence. In fact, reduced the fees and costs requested by 90 percent on the sole basis, again, that, well, Mr. Guy just didn't succeed well enough because all he got was a nominal damages award of $1. Now, the District Court order that we're appealing here today pays lip service to some of the other factors involved, but when you read the order, it boils down to just that. I'm going to reduce 90 percent of the fees and costs based on the outcome of $1, the success of the motion. But admittedly, it was a limited victory. Three defendants, 18 counts, one verdict on one count for $1. Well, Your Honor, these... Excuse me. Is that factual? I don't agree, Your Honor, and I think... Excuse me. Three parties, three plaintiffs, 18 counts, right? One plaintiff, and there were 17, I believe, counts against three defendants. Right. Okay. Recovery on one count for $1. But, Your Honor... Is that right? That is how the trial was checked. In fact, if I recall first, the award was, for some reason, the judge did not give that instruction that says if you believe some liability attaches you can name it nominal and $1. He didn't say anything about $1, and he came back and re-instructed the jury that nominal damages could be as low as $1. Is that correct? Yes. And they gave $1. Right. So my question to you is, if, in fact, $35,000 compared with the total that we started out with here of costs, which I have a certain quarrel with, but that's not my issue here, of $349,801, what's the fair award of attorneys here? Well, the fair award has to be determined by following the law, Your Honor. Tell me what it would be. Well, Your Honor, that is what the discretion of the court is to decide. Now, we feel... You claim that he abused his discretion. What would be his correct? Well, let's look at... Just pull something out of the ceiling here. Well, let's look whether the – I mean, this is the challenge that the district court does have, Your Honor. And what we've asked your... And didn't he reason it? I'm not trying to defend him. I'm just trying to ask you. You say, well, he just threw out, just rolled the dice, 10 percent. Didn't he say why? He said, you won, and you won on a point that is significant for the city of San Diego, and you're entitled to fees, but in the grand scheme of things, I think the amount of fees of 10 percent is sufficient. Isn't that an exercise of discretion? Well, it would be if he went through the factors and explained how he got there, Your Honor. Now, what the 10 percent, if you look at it in this case, 10 percent is below the 13.5 percent, which is the low end of the scale that the city said would be a reasonable award in this case. That low end was 13.5. The high end was 27 percent, Your Honor. Well, didn't he consider under Machbach-Watkins, didn't he consider the degree of success obtained? And didn't he consider the significance of the legal issue to which the plaintiff claims he prevailed? No, he didn't. And here's why. Here's where the error occurred, Your Honor. What he said, again, after his analysis in the order, is that there was no, I had no way to value the public benefit from this verdict. And yet, on the other hand, he said, well, so I can't increase the award, but, on the other hand, I can look at these success versus unsuccessful claims where this panel has already determined that those are so intertwined that they can't be, this court has already determined that those core facts are so intertwined that they can't be parsed out to make a determination like that. And the court said, well, I can do that by discretion. I can knock down your award by 90 percent, but I cannot say that there is any public value to the public good, because you didn't present evidence to me that the San Diego Police Department did anything in response to this. That is where I thought you would start with that point, because I think that our prior decision made a finding. It stated that there was a tangible benefit, and so it seems that Judge Miller may have erred by requiring you to come forward with evidence after our court, I wasn't on the panel, none of us was on that panel, but our court majority clearly held that there was a tangible benefit. So was it abuse of discretion to require you thereafter to come back with some evidence of that? Your Honor, that's our argument exactly. We think it was an error. I thought you would start with that. I'm sorry, I'm getting around to it. You robbed the case. On that point, that's our argument exactly, that the court, the district court simply ignored what this court had already ruled to be the case. And, in fact, it ignored Mayhack versus Mayhack-Windsor versus the P, which said that that kind of evidence isn't required, it's just not relevant to the determination of the value of the public benefit from an award like this. Now, if you look at this award, or the verdict in this case, what this court has said already is that it gives direction to the San Diego Police Department about what to do after they've subdued. But what's really interesting was that in the context, it seems that that was sort of the way there was majority opinion in this case because the dissent said that the verdict was irreconcilable, that, in fact, it should have been more than nominal damages and that a new trial should have been granted. And that's the other point, Your Honor. These were the two things that were, as we call it in our brief, the law of the case, that there was a public benefit and that the facts were so intertwined they couldn't be parsed out, which is why we think that there is error in the district court's order for that reason alone, in addition to the fact that the law requires that if you're going to try to put a reasonable value, you have to go through the Johnson-Ensley factors, which it says in an ambiguous way it says it considered all of the relevant factors. But what's required is it's got to go through each of them and explain why it doesn't, how it affects the court's decision in its exercise of discretion. Was Perdue decided after Farrar? I'm sorry. Which case? Your Honor, I don't know what I'm talking about. Well, I'm just wondering, it seems like the district court didn't address what the correct amount would be to induce a capable lawyer to take on such a case where it is an unsympathetic plaintiff who was involved in a bar fight that then afterwards happens to get pepper sprayed after he's already subdued. Well, I think that's the guiding principle for why the law requires that a district court go through all these factors, and that's a big one. In cases like this, we want attorneys to take cases like this as a public good so that people's constitutional rights are protected. So there has to be a fair analysis once there's a success in that effort by an attorney and a client to figure out, well, what's that worth? And we're not contending that it's a take-all-or-nothing situation here at all. I mean, there is a certain kind of case. Judge Wardlaw's case, the one Judge Wardlaw referred to, says a reasonable attorney's fee is one that is adequate to attract competent counsel but that does not produce windfalls to attorneys. Now, that's the objective. After the first report she read to you, that a reasonable fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case. Now, that's the standard that applies, and that is Purdue, which I believe is after Farrar. And that was the district judge's function. And whether or not the district judge attempted to follow that Supreme Court law, I'm not sure. But what we have to do is to determine whether what he did is consistent with that Supreme Court mandate. Obviously, you know, there are civil rights cases where, you know, the case isn't very sympathetic and it's not going to produce a verdict, but they're there to try to get a policy implemented or to give instructions to a police department or some government agency. But it doesn't involve much damage that a jury is going to give to the individual. So the question really is how do you get competent civil rights attorneys to undertake those cases? And is a 90 percent reduction of the load score a reasonable action, or is that an abuse of discretion? Well, we would argue it's an error of law and an abuse of discretion, because he has to tell us how he got there. And in reading the order, you don't see him mention any part of that discussion. The judge, though, makes a good point. I mean, in a way, you might have hurt yourself by overreaching and asking for 2008 rates and asking for a substantially larger sum than what the standard would kind of dictate. Well, what's interesting about that part of this case, and this is the final thing I want to mention and I want to reserve a couple minutes for response, but the judge understood and actually agreed that at the time of the motion the fees were higher in the community in San Diego for the work that we do. And then he gave us those fees for the appellate work that we did before he reduced the 90 percent. But what he didn't do and what the law requires is that once you make that determination that the case has been around long enough, that the fees have dramatically changed from when the trial happened to when the motion for fees is filed, all of the districts and the district courts, all the district courts require that you either give the current fees, which we do here in the Ninth District, or you give interest for the fee amount that you determine is reasonable for the trial work before the change was made. So the city spent a lot of time arguing, re-arguing this issue that it wasn't fair to bump up the fees. Well, there's no appeal on that issue. That's not before the court at all because the court, the district court, decided that that was correct, that those fees were the district standard or the local standard at the time the motion was filed. But what it didn't do was give those fees from the start of trial forward, which it was required to do, or factor in some interest. And it doesn't even take the district court didn't even take the time to explain why that would be. It simply just didn't do it, and there's no explanation in the order at all. So it's hard from my point of view and your point of view to figure out why. All right. Well, you wanted to save some time. You have a little less than a minute, but we'll give you a good two minutes. Thank you very much. Good morning. George Schaefer on behalf of the City of San Diego and Officer David Maley. And mention has been made that the trial court was constrained by Supreme Court precedent, but I think it's also important to note that the trial court was constrained by the mandate of this court. I'll be at another panel that issued the published opinion. And the court in the first case, this court said, it is a close question, but we conclude that the district court abused its discretion in completely rejecting Guy's requests for attorney fees. The jury verdict that some of Maley's force was excessive offers clear and important guidance to the police department, which is a sufficiently tangible result. And they go on to state in their opinion, the prior panel, that such a result under the circumstance of this case would justify some amount of cost and attorney fees. What happened, however, is when we're back before the district court, the plaintiff takes the position that it was basically entitled to all of its fees and costs exceeding a half a million dollars. And the court was placed in a situation where at one point it even had to ask Plaintiff's counsel during the fee hearing, are you saying this is an all-or-nothing proposition? And they did retreat and said, well, it's not an all-or-nothing proposition. But with that type of vigorous argument that they should get all the fees ---- What's the problem? They argued, they asked for more than they gave him. We're looking at what he gave them. They say it's a vigorous argument. Well, I hope your argument on the other side was also vigorous. That's what goes on in lawsuits and disagreements. Both parties should make vigorous arguments. Now, when are we going to get to the issue here? Well, what I'm leading up to, Your Honor, is contrary to what has been presented, the trial court did, in a clear and concise order, list all of the factors to consider, citing the Southeast Legal Defense case, the Johnson case, and took in its written order, noted that the Plaintiff had requested at trial over $100,000 and specials of $3,075, received .001 percent of the amount requested, and acknowledged And this is very unfair, I believe, Your Honor, on behalf of the Plaintiff, that the assertion is made that the district court did not consider the prior panel's decision about the public good that the ---- Well, he did kind of sarcastically. No, Your Honor. The tone of it was kind of odd. But that's not my real question. My real question is, Purdue was decided in 2010, and the district court judge issued his decision in 2011, yet he makes no mention of Purdue at all as guidance from the Supreme Court. I mean, we can make an argument that the Purdue case sort of re-emphasized what the overall goal of attorney's fees really is, that yes, we have these tolls, we look at the load star, and these Hensley factors, or gross factors, whatever you want to call them, but the overriding purpose of awarding fees is the standard that we've been talking about from Purdue, yet it's not even cited in the decision. Well, in fairness, I think, to the district court, the plaintiff did not argue Purdue, and the district court actually quotes Farrar that You, of course, didn't feel obligated to point it out to him. Well, we were primarily focused on, when we were before the district court, following wasn't aware of Purdue because nobody told him about it. I'm not saying that. I'm just pointing out that What are you saying? Did he follow Purdue, or didn't he? What I'm saying is that the district court quoted Farrar on page three of its report Yes. about how the primary consideration in making the determination is the amount of damages awarded as compared to the amounts Okay, now, if you read Purdue, would you not have a somewhat different view of the purpose of these attorney's fees in this type of case? Well, the judge did say, the district court on page four in footnote one, that although the plaintiff litigated the action with vigor and commitment, it was not the type of case which precluded the undertaking of other cases or causes. So the judge was aware What? Could you read that again? You said it went a little quickly. Oh, I'm sorry. Moreover, although counsel for plaintiff litigated this action with vigor and commitment, this was not the type of case which precludes the undertaking of other cases or causes. Well, I know, but that's not really what Purdue's talking about. Purdue says you want to give fees in these civil rights cases that will encourage people to undertake that kind of litigation. I don't see any recognition of that in his decision to cut by 90 percent. And I was trying to find out, and you said, well, they didn't tell him about Purdue. And then you said, well, I didn't tell him about Purdue. Is there anything that suggests that the district court was or was not aware of Purdue? I don't recall anything in the record that would suggest You were aware of Purdue? As I've been here today, I did not come prepared to argue Purdue because that was not briefed by the parties. But were you aware at the time? No, no, I did not. Because it seems kind of odd that we'd have this huge dispute about attorney's fees and yet no one would reference the latest significant Supreme Court decision on point. I think what happened in this case is that we were very much focused on what the panel decision said. And one of the things that was said by the panel, Judge Gould in the majority opinion, is his acknowledgment from the Cummings case that an award of nominal damages intended to serve as a symbol of the defendant's conduct resulted in a technical as opposed to an injurious violation of plaintiff's rights. And they went on to say, and this is on page 587 of the published opinion in the footnote, that the plaintiff had not met his burden of showing that all of his actions necessarily caused an injury. And then went even further and said that the jury's special verdict necessarily found that it was Officer Bailey's reasonable actions that caused the injury, not excessive force. The dissent in that case points out that none of that is related to the evidence in the record and that it's all speculative. It might have done this, may have done that, right? Disregard that? That is what the dissent found, and it was pointed out by plaintiff's counsel, and the Court reminded plaintiff's counsel, well, that is the dissenting opinion. We felt that we were bound to, by the majority opinion, consider it. Right. But even the language that's used is speculative. The jury may have found, jury might have found, it's all speculative. We don't know what the jury is thinking. Well, I don't, this part of the opinion, Your Honor, respectfully, I don't think is speculative. The panel says, by answering the injury question in the affirmative for Mailey, the jury could have meant only that some of Mailey's reasonable actions caused injury and not necessarily that Mailey's actions, constitutionally excessive force, caused injury. What's important about that is the district court acknowledged there was a public good, there was a tangible public benefit, but the district court wanted to have before it some argument or information, the value of that good. Well, how would you do that? Suppose you were to do it. How would you? Your Honor. We tell police departments, not only in San Diego, but in general, that certain things are not acceptable. How would you value the benefit of that in terms of money? I would, if I were plaintiff's counsel, follow the Supreme Court's decision in the Rivera case and this Court's decision in the Morales case that requires a district court to consider whether the plaintiff has affected a change in policy or a deterrent to widespread civil rights violations. That is. Let's take the second half first. I think I wrote that opinion. And if you ask me what that means, I probably couldn't give you a better answer than you could give me. What is the effect of a deterrent on police conduct in departments throughout the Ninth Circuit? How much money is that worth? I think you could point to cases where, because of a jury verdict, there was a policy change that deterred police misconduct. But there was no evidence of that presented here. All right. That's why I asked you about the second half, the or. Yes. I don't know. Would you get nothing if the San Diego Police Department said, screw you, we don't like that decision, we're not going to follow it? Then you don't have to get anything? No. Just to get San Diego. You know, when we write an opinion, supposedly, it's going to affect police departments throughout the circuit. How do you know that where? I mean, I won't take this out of your time, but I was once president of the police commission in Los Angeles. We had a chief named Ed Davis, who's best known for his book, Hang Him at the Airport. But Ed Davis said when the Miranda case came down or whatever, now the one that applied it to the states, he said, you know, we can't go on violating the Constitution anymore. This is going to destroy our ability to convict people. Now, how do we know what the fact that despite the chief's statement, the department stopped violating Miranda? How much is that worth? Well, I think that's why we, and the case law indicates this, appellate courts are generally very deferential to the district court. It actually was present through the whole trial. If the district court was following the Purdue and said, you know, what I really have to figure out is how do I get these cases, civil rights cases, how do I get lawyers to accept them and give them sufficient fees? I mean, nobody's going to take a contingent fee in a case like this and get a third of a dollar. You know, the only reason that any civil rights lawyer is able to take a case, many of them don't involve any large returns to the plaintiff. I mean, Judge Bell wasn't with us yesterday when we had a case of a convicted murderer who has a suit because in this first trial they used evidence obtained in violation of Miranda. That case was reversed, and he was convicted in the second case. But lawyers handling a case for what was a serious violation because it was the officer said this was his regular policy to get confessions in violation of Miranda. And he says that the prosecutor endorsed that policy. Now, I suspect that the murderer rapist is not going to get much of a verdict because his right was violated. But the idea of filing a civil rights case is to try to get a decision that will affect the policy of that department. Now, I don't think you could get a lawyer to take that kind of a case if he had to base it on the fee he got. I mean, on the verdict he got for the individual. But it may have a substantial effect on the department. That's an example of the kind of how do you get fees sufficient, which is what – I mean, I'm not making this up. This is what Purdue says, that the district judge should try to figure out how do you get sufficient fees to encourage lawyers to take civil rights cases. Well, that's certainly one factor that's important. But the district court on page 5 of its order pretty much summed it up and said, you know, this was a – there was this jury award of $1 nominal damages. It is a limited result. It served as a reminder to the police department. It's not really limited as far as the policy changes that have to be made, if they are, or the lesson that's taught, that's advanced by the court to the – to police departments generally. It's – you know, if they'd been – if they'd found a dollar against each of three defendants or one defendant, it would have very little to do with the change in the policy. You know, lawyers do tend to overplead cases. I think you're right there. But, you know, it's not a question of whether he spent too much time on the case. It's a question of – well, Lodestar, they say in Purdue, is a pretty basic way to do this. Now, I don't have any quarrel with reducing Lodestar to a reasonable amount. But I'd like to know or be able to say if we would uphold this, I think we'd have to say that it complies with Purdue, where it's the first thing they say. It's six important rules. And the first is that it's got to be a fee that's sufficient to encourage civil rights lawyers who may have similar requests to handle cases to know that they'll be getting a reasonable fee. But also, Your Honor, I respectfully submit that Purdue has to be considered a Farrar, which Farrar says generally when there's nominal damages, there's no fee. Well, you know, as the Second Circuit said, they – Purdue changed their view of how you handle these cases. Can I just take it back to the specific case for one second, though? This is something that bothered me about the district court's requirement that the attorneys produce some evidence of value, a change in policy, or whatever, as a result of this case. And I don't see how, at the time that the district court was hearing the fees motion for the second time, the police department in San Diego would have been induced to do anything. Because at the time, all that they had had to pay, or were going to be required to pay, was $1 in nominal damages and no attorney's fees. So why would that fact result in any action by the police department? Well, the district court did not – In essence, they got away with it, you know? They only had to pay $1. Well, it's a little bit more complicated than I would submit, because the district court did not say that it was required that there be proof. He said there was no proof. There was no proof that the police department did anything. Well, in this period of time, why would the police department – I mean, yeah, it might have gotten a lesson. Maybe it realizes it can't do pepper spray, but why would it be induced by having to pay a $1 judgment to change its policy? Well, I think what the district court was acknowledging is that neither party had provided any information on this topic of whether there had been any additional or modified training. But then the district court went on to say, notwithstanding, the jury finding did provide a tangible result as identified by the Ninth Circuit. So the district court was very sensitive and careful to respect the previous panel decision, that there was a tangible public benefit. What the district court was struggling with, which is a very difficult decision, is how do you value that? And what the district court was told to do, you have to provide some fees, some cost in this case. And it had before in a case, you have 18 counts. You have one count where the officer was found to have used excessive force, where the jury initially said no damages, and then after being re-instructed and given the opportunity to provide $1 in nominal damages and finished the damages, only came back with $1 in compensatory nominal damages. So this was a very unusual case in terms of the facts, this whole gang of fighting taking place outside a bar during closing or following closing of the bar, and the officers coming on the scene trying to quell the situation, and then a jury finding that there was excessive force but no damages. And this court was constrained to try, when presented with a demand of over half a million dollars, to come up with a reasonable number and went through all the facts. You guys tried to, sorry for using you guys, but have you tried to settle this fee dispute? I mean, even at the point where, I mean, because here we are again, incurring more expenses. When this case was remanded, first of all, we did try to settle it before the first appeal decision through the Ninth Circuit Mediation Program. And then when the case was remanded, we took advantage of trying to settle it with the magistrate. I don't think it would be ethical for me to go into specifics, but we wanted to settle the case. And as the papers show, I mean, the plaintiff was pretty insistent on receiving all or most of the fees, including fees that we legitimately feel were never awarded, the appellate fees, because there was no motion on appeal for appellate fees. So we were placed in a situation where there being no settlement, there being a demand for half a million dollars, there being a factual record before, you know, a jury of only finding $1, really struggling with what the district court struggled with. How do you value this? And we didn't suggest a percentage amount, as the plaintiff's counsel has argued. We said we think $25,000 to $50,000, somewhere in that range, is fair compensation based on these specific facts, considering what the prior panel said in trying to figure out how the jury reached this conclusion. And one other point, and my time is up, that I think needs to be mentioned, is there was not even a declaration submitted by plaintiff's counsel or other attorneys as to the rate of compensation when this case came back. So it's very unfair, we submit, to say that the district court should have increased the rates from the original hourly rate. When there's no evidence presented, and the case law is clear on that as well, that you have to provide evidence. How did the district court find the appropriate hourly rate? The district court did. It found that the original rate charged for the pre-appellate work should apply, and the amount applied at a higher rate for the appellate work. But did he find that that rate applicable to the district court case, that that rate was X, whatever it was, as of 2008 or 2011, or what? What did he find? The district court found that the plaintiff had originally requested $3.25 an hour and agreed to grant that amount. That was the original amount requested when there was evidence that that was the market rate at the time of the trial, and then found that for the appellate work and for the post-trial work. As I understand it, nobody's challenging his finding, factual findings to the rates. Is that correct? Well, no, one of the issues in this appeal is that the district court should have applied the... No, no, no. Not challenging. You both agree that the district court found a rate that was proper for 2008 or the time the case was brought. The city and Officer Maley agreed to that. I think that the plaintiff is arguing that the 2008 rate is... That's correct. But, I mean, you agree that that... We agree on what was the correct rate in 2008. Correct. Okay. So we don't have to worry about whether they gave you affidavits or didn't. That part's agreed on, that that was the correct rate. The only thing that's questioned is should it have been the rate for 2011 instead of 2008, or alternatively, if it's the rate for 2008, should it bear interest until the time it is paid? Nobody's challenging or quarreling with the district court's finding of what the rate was in 2008. And on that point, in the Gates v. Demasian case, which we cite, the rationale for an increased rate is because one of the factors is to take into account inflation. And that's why we were saying, come on, there's a recession. There should have been something in the record as to why the rate had gone up so much in the interim. Okay. I'm not really, you know, I'm just trying to get the facts straight. There is no quarrel about, you know, what the rate was when the district court fixed the rate. Nobody's appealing that. The city is not appealing any of the trial court's... Okay. So no one's appealing the question of what rate the district trial court found. Your opponents are appealing the question of whether he should have made it the 2008 rate, which, you know. And the alternative argument is that if the 2008 rate is correct, then it's subject to interest. But there's no dispute about anything other than the legal dispute. There's a legal dispute as to whether the court abused its discretion on not applying the current market rate. Yes. Okay. And so that's just a legal dispute. So, I mean, what you were going into about how they established the rate, whether they gave affidavits, that's not really relevant. Okay. Thank you. Okay. Thank you very much. And the city and Officer Mailer requested that this Court affirm the trial court's decision. Thank you, counsel. Thank you, Your Honors. I'll be brief. The Purdue case is mentioned or cited at pages 13, 24, and 26 of our brief in this appeal. You brought up the settlement efforts. The fact of this case and it impacts what would be fair as far as reasonable attorneys' fees is that we never had a settlement offer at all before the verdict. After the verdict came in, we did sit down and come to an agreement, actually, about what fees should be paid, what we would accept. It was all agreed to. It went to the city council, and they rejected it. And so we were put back in the situation of having to go forward with the appeal to complete it. And the mention with the magistrate in regards to the appeal after the most recent remand, Judge Adler, the magistrate, talked to both of us on the phone after hearing our positions, decided for himself that mediation wouldn't be useful. So I don't know what he was told by the other side. I know what I told him, but we never actually had a mediation. So we were forced to come here and forced to argue this again. Now, the last point I want to make is the value. We've been talking around and around. As you heard, the city's position is the same as the district court on remand that, well, you only got a dollar,  We, again, had to take this case to a jury verdict. At the end of our first appeal, we ended up with a published opinion that provides all kinds of direction for not only the San Diego Police Department, if they didn't know what to do before, but other police departments in the state of California about the use of excessive force, particularly after a suspect has been subdued. It's interesting on the question of after you've used appropriate force, what level of force, what's the next step after that? Exactly. It's kind of a novel situation where you've used force. And that's the problem that the first panel of this court had with parceling out the core factual elements that applied to all of the defendants to come up with what of the one or more did the jury decide was excessive force. So in conclusion, the error here is that the judge in the district court simply ignored that the first panel here had already decided that there was a I think we really know the issue by now.  Thank you, Your Honor. I appreciate it. We would ask that the case or the order be voided and that the case be ordered back with a specific number or specific instruction as to the exercise of discretion by the district court. Thank you for your patience. Can I ask you one question? Do you have any objection to taking this case to mediation in our court now on the fees? I know you both talked about the past, but do you think it would be helpful to go to mediation with our mediator? Unless the city changes its position, I don't think so. I'm always an optimist. All right. I'll ask you. Does the city, what's the city's position with respect to mediation? The city always refers to the result of these type of cases to mediation. I wouldn't doubt that the city would not be opposed to trying again. Okay. Thank you both very much. The case is argued will be submitted.
judges: Bell, Reinhardt, Wardlaw